UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**OCEANS OF IMAGES**
**PHOTOGRAPHY, INC.,**

    **Plaintiff,**

v.                                    Case No. 8:11-cv-1160-T-30AEP

**FOSTER AND SMITH, INC.,**

    **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Plaintiff's Motion for Partial Summary Judgment (Dkt. 35), Defendant's Motions for Partial Summary Judgment (Dkts. 37, 38), and the parties' respective responses to same. The Court, having reviewed the motions, responses, record evidence, and being otherwise advised of the premises, concludes that the motions should be denied.

## BACKGROUND

On May 25, 2011, Plaintiff Oceans of Images Photography, Inc. ("Oceans") filed the instant copyright infringement and breach of contract action against Defendant Foster and Smith, Inc. ("F&S"). Richard and Laura Howard, who are husband and wife, are the only owners of Oceans. Mr. Howard has been taking photographs, including underwater photographs, since at least 1985. Mr. Howard is the author of numerous photographs depicting birds, fish, ponds, reptiles, flowers, and underwater aquatic life.

From 1996-2001, Pet Warehouse began contracting with the Howards for limited use of some of Mr. Howard's photographs in Pet Warehouse's marketing materials. At that time, the Howards licensed the photographs through their Ohio Company, Oceans of Images, Inc. ("OOI"). Under the parties' arrangement, OOI provided photographs to Pet Warehouse for Pet Warehouse's consideration for use in its advertising materials. Pet Warehouse would review the images provided and select those that it wished to utilize in its advertising materials.

In 2001, F&S acquired Pet Warehouse. F&S is a privately held company that retails pet related merchandise and services, including pharmacy services. F&S displays its merchandise for sale through its print and website based catalogs. Specifically, F&S has, in the past or currently, catalogs (in print) and website pages for wild birds, pet birds, cats, small pets, horses, dogs, cats, reptiles, aquarium and fish products, and ponds. Over the course of many years, F&S has accumulated tens of thousands of graphic images of plants, birds, fish and/or animals from various sources, including more than 4,000 images from Pet Warehouse.

After F&S acquired Pet Warehouse, Mrs. Howard contacted F&S about Mr. Howard's photographs and whether F&S would be interested in using Mr. Howard's photographs in its catalogs and on its website. From late 2001 or early 2002, F&S began using Mr. Howard's photographs, subject to limited licenses provided by OOI to F&S. The limited licenses restricted both the time and manner in which F&S could utilize the various photographs. For example, if F&S wanted to use one of OOI's photographs on the cover of

a catalog, it paid one price, while it paid a different price if the usage was for an internal page. The licenses provided expiration dates and stated that continued use of the images after the expiration date required additional negotiation.

Mrs. Howard dealt with multiple people at F&S. According to Mrs. Howard, F&S would request certain images, Mrs. Howard would provide F&S with images that fit the description or category requested, and then F&S would tell Mrs. Howard which images it intended to use and in what capacity, i.e., catalog, website, etc. Mrs. Howard would then draft the accompanying license, which stated the image, the price, the use, and remaining licensing terms.

Sue Ellen Hopp, one of several F&S employees Mrs. Howard dealt with, kept track of the licensed images and their expiration dates. Hopp left her position as production coordinator on or about March 2004. Subsequently, it appears from the record that Mrs. Howard mostly dealt with F&S employee Ryszard Kotula, who took over Hopp's responsibilities related to image usage throughout F&S's marketing publications. Kotula did not keep track of the licenses' expiration dates. According to Kotula, neither Mrs. Howard nor Hopp told him that Hopp was tracking the start and end dates for license periods and he assumed that OOI was doing so. According to Kotula, after he resumed Hopp's responsibilities, another F&S employee, Barry Benecke, would either request images from Mrs. Howard, or Benecke would have Kotula draft requests on Benecke's behalf for use by staff in the creative department. In addition, other creative staff members occasionally would request Mrs. Howard to send images for use in the internet department. Kotula believed that

Mrs. Howard was invoicing F&S for these requests. According to Kotula, F&S also sent the Howards proofs of F&S's catalogs in which images from the Howards appeared with the expectation that the Howards were reviewing F&S's use of the images.

The record reflects that at some point prior to March 2004, Mrs. Howard stopped regularly sending invoices to the creative department where Hopp, Benecke, and Kotula worked, and started sending invoices directly to F&S's Accounts Payable department. The correspondence between the parties reflects that, at times, Mrs. Howard would send invoices to F&S for past use, or for images that she observed F&S used on the internet. Throughout the relationship, Mrs. Howard made available more than one thousand images to F&S for its review and selection.

According to Mrs. Howard, F&S terminated its relationship with the Howards in early 2005; specifically, Hopp told Mrs. Howard that F&S had a shift in its marketing approach and no longer wished to use the Howards' pictures. This effectively terminated the relationship between the parties. The last license expired no later than March 2007.

According to F&S, it never terminated its relationship with the Howards. The record reflects correspondence between Mrs. Howard and Kotula as late as 2006. After 2006, the record lacks any correspondence between the parties.

It is undisputed that F&S continued to utilize the Howards' pictures after 2006 and up until the filing of the instant lawsuit. According to F&S, it assumed that the Howards were monitoring F&S's usage of the Howards' photographs during this time, and invoicing F&S accordingly.

In 2007, OOI dissolved. In late 2010, Mr. Howard acquired an aquarium for his birthday and obtained a copy of one of F&S's catalogs in late 2010 or early 2011 to look for supplies. At that time, Mr. Howard discovered that F&S was continuing to use his photographs. Mr. Howard notified Mrs. Howard, who then contacted F&S employee Pat Heerey, the manager of F&S's catalog creative department. According to Mrs. Howard, "I told Ms. Heerey I was very excited to see that one of our images was once again being featured." (Dkt. 52 at 55:14-15). And that "I didn't realize she was in the market for images." *Id.* at 17-18. According to Mrs. Howard, Heerey informed Mrs. Howard to invoice F&S.

According to Heerey, Mrs. Howard called her in the spring of 2011 and they had a brief, friendly conversation about whether F&S would be interested in continuing a relationship with the Howards. Heerey did not remember if Mrs. Howard told her that she had seen some of the Howards' pictures in various F&S publications. It is unclear what happened after that point, but it is undisputed that Mrs. Howard did not invoice F&S for the use of Mr. Howard's image in the catalog. Rather, it appears that the Howards subsequently discovered additional uses of their images in F&S's catalogs and on its website, and this lawsuit ultimately ensued.

After Heerey was informed of the instant lawsuit, she instructed employees within her department to delete the Howards' images from F&S's image files and databases.

Relevant to the issue of standing, discussed below, on May 4, 2011, approximately three weeks before filing the instant action, the Howards created Oceans of Images

Photography, Inc. ("Oceans"), Plaintiff in this case. As will be discussed in more detail, Richard Howard transferred all rights, title, and interest in his photographs, including the right to recover for past damages, to Oceans.

Oceans now moves for partial summary judgment on its copyright claim. F&S moves for partial summary judgment on Oceans' lack of standing. F&S also moves for summary judgment on Oceans' claim of damages based on F&S's gross revenues.

## SUMMARY JUDGMENT STANDARD OF REVIEW

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions,

answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## **DISCUSSION**

**I.     F&S's Motion for Partial Summary Judgment as to Oceans' Standing**

A copyright vests originally in the author of a particular work, such as an architectural plan, and the owner of the copyright has the exclusive right to prosecute an accrued cause of action for infringement of that copyrighted work. *See* 17 U.S.C. § 201(a), 501(b). Mr. Howard owned the photographs at issue in this case and held the exclusive right to sue for their alleged infringement. The issue presented in F&S's motion with respect to standing is whether Mr. Howard properly transferred his rights in the photographs to Oceans. The transfer of a copyright is not valid "unless an instrument of conveyance, or a note or

memorandum of the transfer is in writing and signed by the owner of the rights conveyed." 17 U.S.C. § 204(a). The Eleventh Circuit has recognized that this statute can be satisfied "by an oral assignment later ratified or confirmed by a written memorandum of the transfer." *Imperial Residential Design, Inc. v. Palms Dev. Grp., Inc.,* 70 F.3d 96, 99 (11th Cir. 1995) (citing *Arthur Ratenburg Homes, Inc. v. Drew Homes, Inc.,* 29 F.3d 1529, 1532–33 (11th Cir. 1994)).

F&S argues that Oceans lacks standing because it did not possess any rights in or to Mr. Howard's photographs (the "Works") at the time this action was filed on May 25, 2011. As stated above, Oceans was formed on May 4, 2011. The record reflects that on September 6, 2011, Mr. Howard executed a Copyright Assignment. The Copyright Assignment transferred and assigned to Oceans all of Mr. Howard's rights, title, and interest (including copyright) "of every kind whatsoever" in the Works. The Copyright Assignment provides that it "shall be deemed effective the 5th day of May, 2011". (Dkt. 36-4). F&S argues that the Copyright Assignment is a belated effort to bolster Oceans' standing.

F&S's argument with respect to the back-dated Copyright Assignment fails because it ignores Eleventh Circuit precedent that has acknowledged that a copyright assignment can refer to an earlier oral agreement; here, the Copyright Assignment, although dated September 6, 2011, refers back to May 5, 2011, the effective date. Notably, the Copyright Assignment includes explicit language transferring causes of action for prior infringements.

Significantly, the record is undisputed that there is no dispute between Mr. Howard (the assignor) and Oceans (the assignee) with respect to the assignment. In *Imperial*

Page 8 of 16

*Residential Design*, the Eleventh Circuit noted: "we agree that, where there is no dispute between the copyright owner and the transferee about the status of the copyright, it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement." 70 F.3d at 99 (citing *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.,* 697 F.2d 27, 36 (2d Cir. 1982)).

Finally, F&S's argument that Mr. Howard's assignment to Oceans is limited to the list of Works specifically delineated in the Copyright Assignment fails. As Oceans points out, Mr. Howard may amend the Copyright Assignment to include the infringed Works he became aware of after the filing of this lawsuit given Mr. Howard's oral assignment of all of his images, their respective copyrights, and the associated right to recover for any and all past, present, and future infringements to Oceans.

Accordingly, the September 6, 2011 Copyright Assignment establishes Oceans' standing in this case and F&S's motion for partial summary judgment on this issue is denied.[1]

## II.     Oceans' Motion for Partial Summary Judgment on Its Copyright Claim

Oceans argues that the record is undisputed that F&S infringed the copyrights Mr. Howard assigned to Oceans when F&S printed and distributed millions of unauthorized copies of Oceans' photographs through F&S's numerous marketing channels.

---

[1] F&S's remaining arguments with respect to Oceans' standing are without merit.

In order to sustain a claim for copyright infringement, Oceans must prove: (1) ownership of a valid copyright and (2) F&S copied "constituent elements of the copyrighted work that are original." *Calhoun v. Lillenas Pub.,* 298 F.3d 1228, 1232 (11th Cir. 2002).

### A.   Ownership of Valid Copyrights

To demonstrate that it owns a valid copyright, Oceans must prove that the Works are "original and that [it] complied with applicable statutory formalities." *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996). Under 17 U.S.C. § 410(c), a copyright registration made within five years after first publication is *prima facie* evidence of the copyright's validity. "The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court." 17 U.S.C. § 410(c).

The record reflects that one of the registrations was made within five years after first publication. Copyright applications were sent in May 2011 for the remaining copyrights, and it appears from the record that copyright applications were filed and are now currently registered with the United States Copyright Office. It is also undisputed in the record that Mr. Howard took the photographs that make up the Works and possessed all of the original slides for each of the photographs taken prior to switching to digital photography. Mr. Howard also possessed all of the original digital files for each of the photographs taken digitally. It is also undisputed that Mr. Howard assigned all of his rights in and to the Works, including the right to recover for past damages, to Oceans.

F&S's main argument with respect to the validity of the copyrights relates to the validity of the retroactive Copyright Assignment from Mr. Howard to Oceans, which the

Court has already addressed. Other than asserting some hyper-technical arguments that lack merit as to certain registrations, F&S does not point to anything in the record amounting to fraud or scienter or doubt as to Mr. Howard's authorship of the photographs.

Based on the foregoing, Oceans adequately demonstrated the first element of its copyright infringement claim: ownership of a valid copyright.

### B.     Copying and Distributing the Works

Oceans argues that the record is undisputed that F&S copied and distributed Mr. Howard's photographs without authorization. The Court concludes that the record is rife with disputed facts on this issue because a jury could conclude that F&S had an implied license to continue to utilize Mr. Howard's photographs. Notably, although the Copyright Act provides that the transfer of an exclusive license to a work must be in writing, the statute exempts nonexclusive licenses from the writing requirement. *See* 17 U.S.C. § 204; 17 U.S.C. § 101 (defining transfer of copyright ownership to exclude a nonexclusive license). Thus, a nonexclusive license to use a copyrighted work "may be granted orally, or may even be implied from conduct." *Jacob Maxwell, Inc. v. Veeck,* 110 F.3d 749, 752 (11th Cir. 1997) (internal quotations omitted).

An implied license is created when: "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee copy and distribute his work." *Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261, 1281 (M.D. Fla. 2008) (quoting

*Nelson–Salabes, Inc. v. Morningside Dev., LLC,* 284 F.3d 505, 514 (4th Cir. 2002); *Effects Assocs., Inc. v. Cohen,* 908 F.2d 555, 558-59 (9th Cir. 1990)).

The record is undisputed that Oceans provided F&S with numerous images at F&S's request for F&S's use of the images in its catalogs and on its website. The evidence in the record is, at best, inconclusive and contradictory on the issue of whether F&S had an implied license to utilize Mr. Howard's images after 2007, when the last express license expired. Although the invoices appear to require that a license must be obtained before any use of an image is permissible, in practice, F&S did at times publish images before finalizing permission. Further, it appears that Mrs. Howard, who exclusively dealt with F&S, tacitly assented to this practice at times. The record reflects frequent and informal interactions between the parties, without any particular ordinary course of conduct. The nature of the relationship is further muddied by the fact that Mrs. Howard dealt with numerous F&S employees, who employed different methods of obtaining and utilizing the images. Hopp was the only F&S employee who kept track of the licenses' expiration dates. The remaining F&S employees appeared to assume that Mrs. Howard was keeping track of the licenses' expiration dates.

The record reflects that Mrs. Howard's invoicing of F&S's use of the images was disorganized (as she frequently acknowledged in her correspondence with F&S). There is also a disputed fact with respect to whether the relationship between the parties was terminated. Mrs. Howard stated that the relationship terminated in 2005. But there is correspondence between Mrs. Howard and Kotula in 2006. And according to F&S, the

relationship never terminated; F&S assumed Mrs. Howard was continuing to send the Accounts Payable department invoices for its usage of Mr. Howard's images. F&S points to evidence in the record showing that F&S sent its catalogs to the Howards during the relevant time period.

Simply put, F&S may or may not be able to persuade a jury that the course of conduct here created an implied license. In either case, there is insufficient evidence in the record for the Court to resolve this question as a matter of law. Accordingly, summary judgment in favor of Oceans on its copyright infringement claim is denied.

### C.     F&S's Affirmative Defenses

Oceans also moves for summary judgment on each of F&S's affirmative defenses. As stated herein, there are too many material disputed facts in the record with respect to F&S's affirmative defenses related to whether its usage of Mr. Howard's photographs was pursuant to an ongoing license. Thus, the Court will not grant summary judgment in Ocean's favor on F&S's affirmative defenses related to ongoing licenses between the parties.

There are also material disputed facts with respect to F&S's affirmative defenses related to the statute of limitations, waiver, promissory estoppel, equitable estoppel, and laches because it is entirely unclear when the Howards became aware of F&S's continued use of Mr. Howard's photographs. F&S presents evidence that it continued to mail its catalogs to the Howards' residences during the time period they allege the infringement occurred. In sum, there are disputed facts as to whether the Howards knew or should have

known about any alleged infringement and how long they delayed in asserting their copyright infringement claims.

F&S's remaining affirmative defenses relate to issues that the Court has previously addressed or amount to denials of Oceans' claims, rather than true "affirmative defenses." F&S may assert these arguments during the trial of this matter to the extent that they amount to denials of an element of the underlying claims.

Accordingly, Oceans' motion for partial summary judgment as to F&S's affirmative defenses is denied.

### III.  F&S's Motion for Partial Summary Judgment As to Oceans' Claim for Damages Based on F&S's Gross Revenues

In its complaint, Oceans claims damages under 17 U.S.C. § 504(b), which provides that:

> [t]he copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. § 504(b).  There must be "some nexus between the infringing activity and the gross revenue figure proffered by a plaintiff." *Ordonez–Dawes v. Turnkey Props., Inc.,* 2008 WL 828124, at *3 (S.D. Fla. Mar. 26, 2008).  A low initial burden is placed on the copyright holder to make a showing of some causal connection between the infringement and the profits claimed.  "[A] plaintiff may not seek gross revenues based entirely on a speculative

connection to the plaintiff's claim." *Thornton v. J Jargon Co.,* 580 F. Supp. 2d 1261, 1280 (M.D. Fla. 2008). Here, F&S argues that Oceans' claim for damages based on F&S's gross revenues is too speculative. The Court disagrees and concludes that there are genuine issues of material fact with respect to Oceans' damages and whether F&S's profits are attributable to the infringement. *See Home Design Services, Inc. v. Park Square Enterprises, Inc.*, 2005 WL 1027370 (M.D. Fla. May 2, 2005).

In *Park Square Enterprises*, the defendant, like F&S, argued that the plaintiff "has failed to produce any facts which tend to show a causal link between Defendants' alleged infringements and the profits which they purportedly derived from such infringements." *Id.* at *3-4. The court rejected this argument, stating:

> Should Home Design ultimately prevail on its claims, Section 504(b) provides that it shall be entitled to both actual damages as well as "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." In establishing the extent of such profits, Section 504(b) further provides that "the copyright owner is required to present proof only of the infringer's gross revenue." It is the infringer's burden "to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."

> Notwithstanding the plain language of Section 504(b), Defendants maintain that, to survive summary judgment, Home Design must proffer "non-speculative evidence" which supports a causal link between Defendants' profits and their alleged infringing activities. As there is no basis here to depart from the plain language of a statute, Defendants' argument fails. In the event that Home Design's claims succeed, the onus will lie with Defendants "to show both the net profit (revenues less expenses) and the profit elements attributable to factors other than use of the copyrighted work."

*Id.*; *see also Home Design Services, Inc. v. Hibiscus Homes of Florida, Inc.*, 2005 WL 3445522, at *5 (M.D. Fla. Dec. 14, 2005) (denying summary judgment because there was an issue of fact as to which revenues were proper to consider).

Based on the record, there is clearly an issue of fact as to which revenues are proper to consider. As Oceans points out, at trial, it will carry its statutory burden and put forth F&S's gross revenues from its marketing materials that included infringing copies of Mr. Howard's photographs. Also, it is undisputed that F&S used Mr. Howard's photographs in its catalogs and on its website and revenue was generated from the marketing materials. F&S also used Mr. Howard's photographs to enhance its marketing materials and admitted that Mr. Howard's images were higher quality than its other product images.

Simply put, the extent of Ocean's damages, if any, is an issue for the jury. Accordingly, F&S's motion for partial summary judgment on this issue is denied.

It is therefore ORDERED AND ADJUDGED that:

1. Plaintiff's Motion for Partial Summary Judgment (Dkt. 35) is DENIED.

2. Defendant's Motions for Partial Summary Judgment (Dkts. 37 and 38) are DENIED.

**DONE** and **ORDERED** in Tampa, Florida on November 21, 2012.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2011\11-cv-1160.msjs35,37,38FINAL.wpd