## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

OCEANS OF IMAGES PHOTOGRAPHY, INC.,
a Florida Corporation

       Plaintiff,                             Case No. 8:11-cv-1160-T-30AEP

v.

FOSTER AND SMITH, INC.,
a Wisconsin Corporation,

       Defendant.

_____/

### PLAINTIFF'S MOTION IN LIMINE
### TO EXCLUDE THE EXPERT TESTIMONY OF JEFFREY SEDLIK

Plaintiff, Oceans of Images Photography, Inc. ("Oceans"), moves this Court to exclude

the testimony of Jeffrey Sedlik ("Sedlik"), who has been designated by Defendant, Foster &

Smith, Inc. ("F&S" or "Defendant") as an expert witness in this case.  Sedlik's testimony is

offered on the issue of damages suffered by Oceans due to the infringement of copyright of

Oceans' photographs through F&S' numerous marketing channels. The "expert" opinion

testimony of Sedlik, as described in his expert report (attached hereto as Exhibit "A") and further

explained in his deposition, is built upon improper analysis and opines on topics for which Sedlik

is not qualified.  Sedlik improperly invades the province of the trier of fact by assessing the

credibility of the testimony of Laura Howard ("Mrs. Howard"), opines as to Oceans' damages

based on the incorrect standard and despite his lack of finance or accounting experience, and

improperly excludes a number of instances of infringement based on his erroneous opinion as to

what constitutes copyright infringement.

The measure of damages Sedlik purports to assess is not relevant as a matter of law.  The

Copyright Act allows a successful plaintiff to recover the alleged infringer's profits attributable

to the infringement and, to the extent they do not overlap, the plaintiff's actual damages suffered as a result of the infringement.  17 U.S.C. § 504.  Sedlik did not properly opine on either, nor could he, because he lacks the qualifications to do so.  Accordingly, his opinions are inadmissible as a matter of law.  For these reasons, as explained more fully below, this Court should rule that Sedlik's opinion testimony is not admissible and therefore, exclude Sedlik as an expert witness in this case.

<u>**THE LEGAL STANDARD FOR ADMITTING EXPERT TESTIMONY**</u>

Rule 702 of the Federal Rules of Evidence "established a standard of evidentiary reliability for expert testimony." *See Daubert v. Merrell Dow Pharmaceuticals. Inc.*, 509 U.S. 579, 590 (1993).  Generally, expert witness testimony is admissible if it is both relevant and reliable.  *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999); *see also United States v. Paul*, 175 F.3d 906, 910 (11th Cir. 1999).  "Pertinent evidence based on scientifically valid principles will satisfy" those demands.  *Daubert*, 509 U.S. at 597.

When an expert witness is proffered, the trial judge must initially decide pursuant to Rule 104(a) of the Federal Rules of Evidence whether to permit the testimony.  *See* F.R.E. 104(a) ("Preliminary questions concerning the qualification of a person to be a witness . . . shall be determined by the Court.").  The burden of establishing the necessary "foundation for the admission of expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence."  *Allison v. McGhan Med. Corp*, 184 F.3d 1300, 1306 (11th Cir. 1999)(citations omitted).  "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony" is valid.  *See Daubert*, 509 U.S. at 592–93.

The admissibility of expert witness testimony is principally governed by Rule 702 of the Federal Rules of Evidence, which provides:

> If scientific, technical, or other specialized knowledge will ***assist the trier of fact*** to understand the evidence or to determine a fact in issue, a witness ***qualified*** as an expert ***by knowledge, skill, experience, training, or education***, may testify thereto in the form of an opinion or otherwise, ***if*** (1) the testimony is ***based upon sufficient facts or data***, (2) the ***testimony is the product of reliable principles and methods***, and (3) the witness has ***applied the principles and methods reliably to the facts of the case***.

(emphasis added).   The Federal Rules of Evidence place a duty on a trial judge to act as a gatekeeper, ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589.

### RELEVANT FACTS

Sedlik is President and CEO of the PLUS Coalition, a global organization that sets standards for image rights information.  Ex. B, Sedlik 16:11–13.  He also teaches at the Arts Center College of Design and operates Jeff Sedlik Photography, a photography studio.  Sedlik 23:15–20.  Sedlik previously served as National President of the Advertising Photographers of America, a trade association for commercial photographers and currently serves as its Chief National Advisor on Licensing and Copyright. Ex. A, p. 2.  Additionally, Sedlik serves on the Photography Industry Advisory Council for Adobe Systems and sits on the Intellectual Property Committee of the Art Center College of Design.  Ex. A, p. 3.  Sedlik prepared a preliminary expert report in this case, a copy of which is attached as Exhibit A.

According to Sedlik, Oceans' actual damages are limited to the license fee for each of Defendant's unpaid usages of Oceans' photographers based on the pricing schedule that existed years before the infringement.  Ex. A, p. 32; Sedlik 164:14–18.  Notably, Sedlik did not conduct any market-rate study of the value of license of the images but rather relied on the prior agreement of the parties.  Sedlik 164:14–18.  Further, in his calculation, Sedlik ignored all

instances of infringement that he claims arose from in-context usage.[1]  Ex. A, p. 32.  His report is based on the erroneous assumption that in-context usage does not constitute infringement even though in-context usage was not included in the subject licenses.    Sedlik 206:19–207:4. Although he admitted that he had never seen anything in copyright law that would allow in-context usage, he based this opinion on his view of the general practice of image licensing and based on his review of two other companies.  Sedlik 207:23–208:6; Ex. A. p. 25.  His opinion that in-context usage is not infringement was merely based on his opinion that in-context usage was a pervasive use.  Sedlik 215:15–20.  Based on this view, Sedlik supports the illogical conclusion that a party could use the cover of a magazine that included the image on a separate advertisement but could not put the actual image in the cover on the separate advertisement. Sedlik 214:3–11.  Despite these beliefs, Sedlik admits that the creation of an in-context use is a creation of a copy of the original work.  Sedlik 215:3–8.

As to damages based on a disgorgement of Defendant's profits, Sedlik makes the erroneous conclusion that Oceans' images had no "significant impact" on Defendant's sales.  Ex. A, p. 37.  Sedlik bases his opinion on his belief that the test for disgorgement of profits is whether there was a "significant change" in sales and that the burden is on Oceans to initially prove this.  Sedlik 230:6–9.  Not only does Sedlik apply the wrong standard, but Sedlik is not qualified to determine damages based on a disgorgement of Defendant's profits.  He is not an economist or an accountant.    Sedlik 41:22–42:3; 227:22–24.    Sedlik did not make any determination of Defendant's gross revenues or profits and even admitted that a forensic accountant would need to make those calculations. Sedlik 80:1–6.  Sedlik further admitted that he was not the person to determine the connection between the use of images and Defendant's

---

[1] Sedlik describes in-context usage as a reproduction of a smaller-size copy of the catalog cover, which cover contains the subject images, and which cover had been previously printed.  Sedlik 72:21–73:19.

revenues and profits.  Sedlik 233:2–5.

Lastly, Sedlik assessed the credibly of Mrs. Howard's testimony, claiming that her testimony was unbelievable.  Ex. A, p. 28.  However, Sedlik does not have any expertise in analyzing deposition transcripts for rendering credibility decisions.   Sedlik 98:5–99:1.  Nonetheless, based on his belief that Mrs. Howard's testimony was not trustworthy, Sedlik did not rely on any assertions made by Mrs. Howard in his expert opinion.  Ex. A, p. 30.

## ARGUMENT

### I.  Sedlik's Opinions Are Not Relevant to the Damages Analysis in the Case.

A successful copyright plaintiff can recover two elements of damages under the Copyright Act: (1) the copyright owner's actual damages; and (2) the infringer's profits.   17 U.S.C. § 504(b).  Section 504(b) provides:

> **Actual damages and profits.** The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof **only** of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

(emphasis added).   "Damages are awarded to compensate the copyright owner for his losses from the infringement, and profits are awarded to prevent the infringer from unfairly benefiting from a wrongful act."  Patry on Copyright § 22:98, citing H.R. Rep. No. 1476, 94th Cong., 2d Sess. 161 (1976); S. Rep. No. 473, 94th Cong., 1st Sess. 143 to 144 (1975).  Both categories of damages are necessary to prevent wholesale theft of protected works.

### A.  Sedlik's Valuation is Not a Measure of Plaintiff's Actual Damages.

As to the first prong of the test –"actual damages suffered by him. . . as a result of the infringement," Sedlik did not apply the correct standard.  Specifically, Sedlik did not perform a

market value for a reasonable license to the infringed images. Sedlik 164:14–18.  In fact, Sedlik stated that prices of other similar images were not even relevant to his calculation in this matter. Sedlik 172:6–8.  Rather, Sedlik's report suggests that Defendant pay Oceans the same amount that it would have paid had Oceans agreed to let Defendant use the particular images Defendant used, in the particular fashion Defendant decided, and for the particular timeframe Defendant wanted.  Simply stated, Sedlik suggests that damages should be limited to an amount that was agreed upon ten years ago.

Sedlik's attempt to limit Oceans' damages to the fee Oceans had charged almost ten years ago for certain works is not tenable.  Indeed, Sedlik ignores entirely that Oceans has previously established a higher rate for its works when Oceans discovers infringing, non-authorized versions of its works,[2] while at the same time admitting that a photographer would be fully justified to seek a settlement from an infringer at a price higher than the photographer would have initially requested.  Sedlik 179:9–13.  Moreover, Sedlik admits that, hypothetically, should Oceans desire to continue a relationship with Defendant, Oceans would be justified in increasing the amount to license additional photographs to Defendant from its original pricing schedule from 2003.  Sedlik 179:17–180:13.  Nevertheless, Sedlik failed to take either of these issues into account and seeks to limit Oceans' actual damages to a price set ten years ago rather than conduct any comparison to other similar licenses or relationships.

Sedlik's valuation is completely contrary to the well-established copyright law.  The Second Circuit cautioned against such improper analysis:

> Whether the infringer might in fact have negotiated with the owner or purchased
> at the owner's price is irrelevant to the purpose of the test. The pertinence of the

---

[2]Prior to Defendant's wholesale infringement of a large portion of Oceans' image portfolio, Oceans had only discovered a single other instance of infringement.  Oceans responded to that single instance (a single work used on a website) by engaging counsel and setting a price for the infringer's use of the work.

> test is not premised on the fictive belief that the copyright owner is worse off than if the infringer, instead of infringing, had done nothing. It proceeds on a different basis. The hypothesis of a negotiation between a willing buyer and a willing seller simply seeks to determine the fair market value of a valuable right that the infringer has illegally taken from the owner. The usefulness of the test does not depend on whether the copyright infringer was in fact himself willing to negotiate for a license. The honest purchaser is hypothesized solely as a tool for determining the fair market value of what was illegally taken.

*On Davis*, 246 F.3d at 171-72.  (internal citation omitted).  The point of the test is that the value must be <u>reasonable</u>.  The *On Davis* court and many other courts attempting to discern a reasonable license fee, eschew "wildly inflated" claims for actual damages and focus their inquiry on prior license fees for similar uses paid to similarly situated sellers by similarly situated buyers, an analysis Sedlik did not make.  *On Davis,* 246 F.3d at 161; *Baker v. Urban Outfitters, Inc*., 254 F. Supp. 2d 346, 358 (S.D.N.Y. 2003).

"Where an expert's opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, or assumptions that represent a complete break with the evidence in the record, it should be excluded."  *Country Rd. Music, Inc. v. MP3.com, Inc.*, 279 F. Supp. 2d 325, 330 (S.D.N.Y. 2003) (internal quotations and citations omitted).  Here, Sedlik's opinion does not entail a market analysis of similar licenses paid by similarly situated parties, does not consider the reasonableness of the license based on the totality of the circumstances and the fact that the original agreed upon price is now over ten years old, and fails to take into account any of the evidence set forth; therefore, it is inherently unreliable and should be excluded.

Sedlik does not apply any scientific or technical knowledge to apply his flawed theory. All he does is look at the Howard's 2003 pricing schedule, and multiple those numbers by what he determines to be the number of acts of infringement.  This is the job of the jury – to determine a price for the works, and multiple that price by the number of images deserving that price.  The

jury can handle this function.

**B.   Sedlik's Valuation is Not a Measure of Infringer's Profits.**

The second category of damages Oceans is entitled to is Defendant's profits attributable

to its infringement.   It is near impossible for a plaintiff to come up with a calculation for this

category of damages.   That is why Congress specifically explained the burdens and obligations

of copyright litigants.   Specifically, recovering an infringer's profits in a copyright infringement

case is a two-step process, wherein the burden begins with the copyright holder, but shifts to the

copyright infringer.   *See* 17 U.S.C. § 504(b).   First, the copyright holder "need only present

evidence of the gross revenue of the infringer." *Oravec v. Sunny Isles Luxury Ventures L.C.*, 469

F. Supp. 2d 1148, 1175 (S.D. Fla. 2006) (citing 17 U.S.C. § 504(b)).   This creates a rebuttable

presumption that all of the defendant's revenues are attributable to the infringement.   *See e.g.*

*Data General Corp. v. Grumman Systems Support Corp.*, 36 F.3d 1147, 1173 (1st Cir. 1994).

The burden then shifts to the defendant "to establish their expenses and the elements of profit

attributable to factors other than the copyrighted work." *Oravec*, 496 F. Supp. 2d at 1175

(internal quotation and citation omitted).

Not surprisingly, Sedlik did not even attempt to perform a lost profits analysis.   Instead,

he attempts to shift all of the burden to Oceans to demonstrate a causal connection between

Defendant's infringement and Defendant's profits. Sedlik 188:14–16; 226:23–24.   However, this

is simply not the test.   And this Court has already rejected this flawed theory.   *See* [Dkt. 61] at

14-16.   In fact, this approach ignores the clear language of the statute; clear language this court

has previously declared should be followed strictly.   *See e.g. Home Design Services, Inc. v. Park*

*Square Enterprises, Inc.*, 2005 WL 1027370 at *4. (M.D. Fla. May 2, 2005).   In *On Davis*, the

court provided the following illustrative example:

> If a publisher published an anthology of poetry which contained a poem covered by the plaintiff's copyright, we do not think the plaintiff's statutory burden would be discharged by submitting the publisher's gross revenue resulting from its publication of hundreds of titles, including trade books, textbooks, cookbooks, etc. In our view, the owner's burden would require evidence of the revenues realized from the sale of the anthology containing the infringing poem. The publisher would then bear the burden of proving its costs attributable to the anthology and the extent to which its profits from the sale of the anthology were attributable to factors other than the infringing poem, including particularly the other poems contained in the volume.

246 F.3d at 152. Under Sedlik's misguided view of the law, the copyright infringing publisher would only argue that the poem stolen from the plaintiff was buried in the back of the anthology, and thus no customer leafed through the book prior to purchase, and thus none of the revenues received from the book are attributable to the infringement.  This argument is wrong.

The Copyright Act creates a presumption that all of a defendant's revenues are attributable to their infringement.  *See Data General Corp.*, 36 F.3d all 173.  Furthermore, "in performing the apportionment [of a copyright infringer's profits], the benefit of the doubt must always be given to the plaintiff, not the defendant." *Walker v. Forbes, Inc.,* 28 F.3d 409, (4th Cir. 1994) (citation and quotation omitted); *see also Sheldon v. Metro-Goldwyn Pictures Corp.*, 106 F.2d 45, 51 (2d Cir. 1939) ("...under the guise of resolving all doubts against the Defendant ... the Defendant must be content to accept much of the embarrassment resulting from mingling the plaintiffs' property with their own.") *aff'd* 309 U.S. 390 (1940).

Rather then follow the well-established law, Sedlik improperly places all of the burden on Oceans and fails to make any determination as to lost profits.  Sedlik's position that Oceans cannot connect Defendant's substantial profits to Defendant's millions of infringing copies of the images ignores Congress' (and this district's) instructions on how this issue should be handled

during litigation.[3] Because Sedlik applies an improper analysis in his lost profits determination, his analysis is not relevant to the § 504(b) damages analysis and should be excluded. *Microstrategy Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1353 (Fed. Cir. 2005)(upholding exclusion of expert report for improper methodology in calculating damages which did not consider relevant factors in its damages analysis).

Sedlik acknowledges Oceans' images were of higher quality than others.  Sedlik Depo at 180:4-6.  He acknowledges that it makes more sense to present fish images alongside aquarium related products (as opposed to presenting images of unrelated content such as "horse stirrups"). *Id.* at 102:16-104:20.  And he recognized that F&S would want its customers to enjoy reviewing the F&S catalogs:

> Q.      And so Foster and Smith would want those people to enjoy looking at that catalog?
> A.      You're asking me to read Foster and Smith's mind.  But if you turn that into a general question, I would say yes, a company would want its customers and potential customers to enjoy reviewing their marketing materials.

*Id*. at 104:21-105:3.  He also conceded that he's not the person to make the determination as to which revenues are related to infringement.  *Id*. at 231:16-233:5.  He should not be allowed to opine on these issues as he has no expertise in doing so.

**II.      Sedlik Improperly Excluded "In-Context" Usage in His Analysis.**

Sedlik's opinion on damages is based upon speculation and must be excluded.  Expert testimony that rests solely on "subjective belief or unsupported speculation" is not reliable. *Daubert*, 509 U.S. at 590; *ARP Films, Inc. v. Marvel Ent. Group, Inc.*, 952 F.2d 643, 651 (2d Cir.

---

[3] Oceans disagrees that it has not established a sufficient nexus between the revenues from Defendant's infringing product lines and Defendant's infringing activities.  Defendant has only provided 2 pieces of revenue information: (1) its total revenues as a company; and (2) its revenues from its bird and fish business units, as those business units are in Defendant's view related to the bird and fish catalogs and websites containing all of the infringement. Defendant claims it can not break its revenue information down in a more granular fashion.  Plaintiff can not be expected to analyze Defendant's revenue information better than Defendant can.  This is why Congress expressly made it the Defendant's burden to do so.

1991)(affirming district court's decision to exclude copyright damages expert's opinion on the value of barter syndication because measure of damages was speculative, "expert" was not an expert on barter syndication, and any probative value outweighed by unfair prejudice and confusion of the issues); *Gen. Electric Co. v. Joiner,* 522 U.S. 136, 146 (1997)(a court may refuse to admit expert testimony if it concludes that "there is simply too great an analytical gap between the data and the opinion proffered.").

Sedlik based his damages analysis on the erroneous assumption that Defendant's in-context uses of Oceans' photographs did not constitute infringement, despite the fact that in-context usage was not included in the licenses between Oceans and Defendant.  Sedlik 206:19–207:4. Indeed, the "terms of use" for each of the licenses clearly states:

> All photographs licensed are for one time use only and may not be used in any other manner then what is explained above in the "Terms of Use" section. Additional use of the image must be renegotiated.

*See* [Dkts. 36-5 & 36-6] (Oceans invoices).  When Oceans permitted additional promotional uses (what Sedlik calls "in-context" usage), Oceans did so explicitly.  *See* Ex. C (Oceans invoice to Pet Warehouse (an entity that F&S acquired) permitting promotional uses) ("The images may be used in direct marketing of the 2001 Fish Calendar.")   But images that were licensed to F&S for use on the covers of F&S' catalogs were limited *only* to a single usage.  *See* Ex. D (Oceans invoices to F&S for cover usages) (Terms of use: "One time use for cover of Drs. Foster/Smith Bird Catalog."  "All photographs licensed are for one time use only and may not be used in any other manner then what is explained above in the "Terms of Use" section.  Additional use of the image must be renegotiated.").  There is no ambiguity in this language.  Nor does F&S suggest the language is ambiguous.

Sedlik relies instead on his argument that because the licenses did not specifically prohibit

in-context usage, that in-context usage was necessarily included in the licenses.  Ex. A., p. 26.

This, of course, ignores the explicit language of the licenses limiting usage to "one time only"

and instructing that images "may not be used in any other manner then what is explained" in the

license.   And based on this view, Sedlik failed to take into account any instances of

infringements that he claims arose from in-context usage.  Ex. A, p. 32.  Although he admitted

that he had never seen anything in copyright law that would allow in-context usage, he claims

that in-context usage is a general practice of image licensing.  Sedlik 207:23–208:6.  However,

quite simply, in-context usage is not a legal defense or theory related to copyright infringement

and Sedlik's reliance on two other companies to show that in-context usage is "pervasive" is

speculative and based on a subjective belief.   Therefore, his opinions should be excluded as

unreliable.  *ARP Films, Inc.*, 952 F.2d at 651.

Additionally, Sedlik's opinion as to the contractual terms of the license and his inclusion of

in-context usage as a new term to the license is inappropriate and inadmissible.  Specifically, an

expert cannot opine as to the meaning of a contractual provision.   *Ramjeawan v. Bank of Am.*

*Corp.*, 2010 WL 1645097 (S.D. Fla. Apr. 21, 2010); *see also Nova Cas. Co. v. Waserstein*, 2005

WL 5955694 (S.D. Fla. Sept. 7, 2005).  Rather, contractual interpretation is a question for the jury

and the legal effect of a contract is a question for the judge.  *Marx & Co., Inc. v. Diners' Club*

*Inc.*, 550 F.2d 505, 510 (2d Cir. 1977).  As a result, expert opinion as to either issue is irrelevant

and inadmissible.  *Id.*; *Ramjeawan*, 2010 WL 1645097.

Here, Sedlik has not identified any specific contract term of the licenses that requires

interpretation.  Instead, Sedlik opines on the interpretation of the licenses and attempts to inject

additional terms into the unambiguous licenses, thereby opining on their legal meaning.  Ex. A, p.

26 ("As Oceans of Images and Defendant did not agree to a prohibition on in-context usage . . . in

context usages of Oceans of Images' photographs are, by extension, made under license and are non infringing usages."). However, neither of these subjects are proper issues upon which an expert can opine. *Marx & Co., Inc.*, 550 F.2d at 510; *Ramjeawan*, 2010 WL 1645097. In fact, by improperly including additional terms to the licenses, Sedlik is making a legal conclusion as to Defendant's infringement based on his contract interpretation. Sedlik's opinion is nothing more than a legal opinion as to the meaning of the contractual terms at issue in the licenses, which is inadmissible and must be excluded. *Marx & Co., Inc.*, 550 F.2d at 510.

### III.   Sedlik Is Not Qualified to Render an Expert Opinion on Damages in this Case.

Even if Sedlik included all instances of infringement and applied the proper standards in his damages analysis, which he did not do, he lacks the "knowledge, skill, experience, training, or education" required by Rule 702 of the Federal Rules of Evidence to testify about damages in this case. Sedlik is not qualified to give an expert opinion on actual damages or a disgorgement of profits for Defendant's infringement of Oceans' images as he is not an economist or an accountant. Sedlik 41:22–42:3; 227:22–24. Further, Sedlik did not make any determination of Defendant's gross revenues or profits and even admitted that a forensic accountant would have to make those calculations. Sedlik 80:1–6. Sedlik stated that he was not the person to determine the connection between the use of Oceans' images and Defendant's revenues and profits. Sedlik 233:2–5. Sedlik simply does not have the education, training or experience to opine on the damages for Defendant's infringement of Oceans' images.

### IV.   Sedlik's Opinions are not a Valid Subject for Expert Testimony.

In his expert report, Sedlik improperly opined that Mrs. Howard's testimony was not trustworthy. Ex. A, p. 30. However, this assessment is improper and not a valid subject for Sedlik's opinion. As an initial matter, credibility assessments are in the province of the trier of

fact—not an expert. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)("[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions").   As a result, Sedlik's opinion as to Mrs. Howard's credibility is inadmissible and should be excluded.  *United States v. Falcon*, 245 F. Supp. 2d 1239, 1245 (S.D. Fla. 2003)("absent extreme or unusual circumstances, expert scientific testimony concerning the truthfulness or credibility of a witness is inadmissible because it invades the jury's province in determining credibility.").

Furthermore, a fundamental requirement of expert testimony is that it assist the trier of fact.  F.R.E. 702; *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1250-51 (11th Cir. 2007)(expert opinion in copyright action excluded because opinions were based upon improper methodology and failed to assist the trier of fact).   "[E]xpert testimony regarding a witness' credibility offers the jury little, if any, assistance, because the jury can determine the reliability of a witness with the tools of cross-examination."  *Maddox v. Cash Loans of Huntsville II*, 21 F. Supp. 2d 1336, 1340 (N.D. Ala. 1998).  Sedlik's opinion does nothing to assist the trier of fact because a juror is fully capable of assessing the credibility of Mrs. Howard.  *See, e.g.*, *Hibiscus Associates, Ltd. v. Board of Trustees of the Policemen and Firemen Retirement System*, 50 F.3d 908, (11th Cir. 1995)("Expert testimony is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves").  Because Sedlik's credibility assessment does nothing to assist the trier of fact and invades the trier of fact's province, it must be excluded.

## V.    Sedlick Is Not Qualified To Opine On The Wayback Machine

Much of F&S' infringing activity took place on F&S' numerous websites.   F&S responded to this complaint by deleting the hard drive containing the images it had copied from

Oceans.  F&S also rearranged its various websites, and did not preserve all historical versions of its websites.  Thus, Oceans best avenue for obtaining historical versions of F&S' websites was using The Internet Archive's Wayback Machine.  *See* http://web.archive.org/ (last visited May 3, 2013).  Defendant's Internet project coordinator, Melissa Read, reviewed the historical webpages captured by the Internet Archive for the F&S websites and confirmed that the historical webpages accurately depicted the various F&S websites from the relevant time periods.  *See* Ex. E Read Depo at 45:24-49:20.   Ms. Read confirmed that she is familiar with the Wayback Machine and that the Wayback Machine was the only way she was aware of to gather historical versions of the F&S websites.  *Id*. at 45:16-19; 50:23-51:1.

Sedlik opines that he finds the Wayback Machine to be unreliable for use as evidence in litigation.  *See* Sedlik Depo at 192:22-194:3.  Sedlik makes this determination, even though he himself has used the Wayback Machine as a means for enforcing his own copyright protections.  *Id*. at 193:4-7.  Sedlik has recommended others use Wayback Machine to gather historical evidence.  *Id*. at 193:14-16.  And Sedlik could not identify any other source to recreate historical webpages, aside from obtaining those records from the author of the webpages if still available. *Id*. at 194:4-25.

Sedlik basis his opinion on lack of reliability on two pieces of information: (1) he found a single page claiming to be from 2008 but presenting a Foster and Smith catalog from 2012; and (2) an excerpt from the WayBack Machine's Legal Frequent Asked Questions ("FAQ") located at http://archive.org/legal/faq.php#wayback (last visited May 3, 2013).  As to the latter, Sedlik relies on the following excerpt:

> How can I tell what date a particular image was archived?: The date assigned by the Internet Archive applies to the HTML file but not to image files linked therein.  Thus **images that appear on the printed page may not have been archived on the same date as the HTML file.**

*See* Ex. A at 21 (emphasis provided by Sedlik).   But the complete FAQ entry provides more

information:

**How can I tell what date a particular image was archived?**

The date assigned by the Internet Archive applies to the HTML file but not to image files linked therein. Thus images that appear on the printed page may not have been archived on the same date as the HTML file. If you would like to find out when a particular image was archived right click (control click from Mac users) and select "open image in new tab [or window]". You can also select "copy image location", open up a new tab or browser window and paste in the url. Once the image opens look at the url in your browser's address window to determine the date the image was captured. Please note that using Microsoft's Internet Explorer's "properties" option can be misleading as it displays the same date code as the url's HTML file when looking at an image. Its best to open the image in its own window to determine the exact capture date.

*See* Ex. F, Sedlik Depo at Ex. 13 (printout of Wayback Machine Legal FAQ).   *See also*

http://archive.org/legal/faq.php#wayback (last visited May 3, 2013).   Thus, the Wayback

Machine specifically instructions how a user should find out when the particular image in

question was archived.   The user should right click on the image to determine the URL and then

rely on the Wayback Machine's URL naming scheme to determine the date of capture.   The

Wayback Machine Legal FAQ also explains its naming convention:

> The Internet Archive assigns a URL to each archived page on its site in the format http://web.archive.org/web/[Year in yyyy][Month in mm][Day in dd][Time code in hh:mm:ss]/[Archived URL]. Thus, the Internet Archive URL http://web.archive.org/web/19970126045828/http://www.archive.org/ would be the URL for the record of the Internet Archive home page (http://www.archive.org/) archived on January 26, 1997, at 4:58 a.m. and 28 seconds (1997/01/26 at 04:58:28). Typically, a printout from a Web browser will show the URL in the footer.

http://archive.org/legal/faq.php#wayback (last visited May 3, 2013)

Sedlik did not perform this analysis.   Sedlik Depo at 199:20-200:17.   Sedlik also

confirmed he had no reason to challenge the authenticity or accuracy of the Wayback Machine's

evidence, aside from the single example he cited.   Sedlik Depo at 197:22-199:19.   And he

indicated that this was new information to him, which he would look into further.   Sedlik Depo

at 205:2-7.   Sedlik has not provided an updated report.   Sedlik has no specialized training in the

Wayback Machine and should not be permitted to opine on it.

As to Sedlik's first basis for questioning the reliability of a single instance (out of more than 100 examples) of a mismatched date, that argument merely attacks the credibility of the single piece of evidence – something F&S is welcome to do to the jury.  But they should not be able to present that attack through Sedlik as he is not qualified as an expert to present that testimony.

## VI.    Sedlik Does Not Apply The Appropriate Standard For Willfulness

In a single sentence, Sedlik opines that "a thorough review of all of the testimony, communications, documents and other materials produced by the parties yields no indication of dishonesty or willfulness on the part of Defendant." Ex. A at 31.  On its face, this is a classic invasion of the jury's fact finding and can not be the basis for expert testimony.  Further still, willfulness in the copyright context does not concern dishonesty or the like.  The test for willfulness is whether the infringing party knew, should have known it was committing infringement or acted with reckless disregard for the plaintiff's rights.   *See e.g. CBS, Inc. v. Casino Record Distributors of Florida, Inc.*, 654 F. Supp. 677, 679 (S.D. Fla. 1987).  Sedlik used a definition that required the infringing party had actual knowledge and/or an intent to infringe. *See* Sedlik Depo at 61:8-16; 67:7-15.  This is not the proper legal definition, and Sedlik provides no analysis exposing any specialized skill or training permitting him to make a determination on willfulness.  This opinion should be excluded.

## CONCLUSION

F&S should not be permitted to present Sedlik as an expert witness in this case.

## COMPLIANCE WITH LOCAL RULE 3.01(g)

Undersigned counsel represents that he has conferred with counsel for Defendant in an

attempt to narrow the issues presented in this motion. The parties could not agree.

Dated May 3, 2013.

_/s/ Woodrow Pollack_____
Woodrow Pollack
Fla. Bar No.: 26802
GrayRobinson, P.A.
201 N. Franklin St., Suite 2200
Tampa, FL 33602
Tel: (813) 273-5000
Fax: (813) 273-5145
Woodrow.pollack@gray-robinson.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I certify that I caused the foregoing to be filed with the Court's CM/ECF system on May

3, 2013, which will provide a Notice of Electronic Filing to counsel of record.

_/s/ Woodrow Pollack_____
Woodrow Pollack